Chief Justice Robertson,

dissenting from the majority of ike court, delivered his own opinion as follows:

No peril of subjecting myself to the imputation of temerity, for dissenting from tiie reasoning and the conclusion of the opinion just delivered, can control my judgment or convince me that it is my duty to acquiesce in what I am constrained to consider as essentially erroneous. The error, if it exist, was not so impregnably established by judicial recognition as tobe entitled to the force of cow-elusive authority. The opinion in Peteet vs. Owsley, is not intangible. It was delivered by only two members of the court; its reasoning is, to my mind, not only inconclusive, but suicidal; it has not been fortified by any subsequent decision by a full court, or even by the same learned judges by whom it was pronounced; at the session of the legislature next, succeeding its promulgation, an act was passed for the purpose of supplying, in express and explicit terms, the supposed,casus omissus, and of enforcing, as I believe, the obvious intention of the statute abolishing the ca. sa. by re-enacting its substance in language that-could not be misunderstood or evaded. Hence “store decisis,” though a wise judicial maxim, when filly applied, and always entitled to much influence, does not conclude the question now involved, nor allow me, (entertaining the opinion I do) to bp content with the easy and irresponsible task of acquiescing in a doctrine once before announced by two of my predecessors, and which, after full and anxious deliberation, my judgment cannot approve as either reasonable or just, or consistent with the act of 182],
The peculiar attitude in which I am thus placed, may render it proper that I should state some reasons for inv own opinion.
As much of the act of 182Í as is material to the. argument, is contained in the first and second sections, and is in these words;
Dissent
“Sec. 1. All laws which authorize a capias ad sa.tisfaciendum to lie issued against the bodv or bodies of any debtor or debtors, shall be and the same is hereby repealed.
“Sec 2. Hereafter no person or persons shall he arrested upon any original or mesne process, or required to give bail, unless upon affidavit being filed with the clerk of the court or justice of the peace from which process is to be issued, stating that the plaintiff or plaintiffs verily believes that the person or persons against whom such process is about, to issue, will leave this Commonwealth, or move his property out of the same, before judgment, or otherwise abscond, so that the processor the court cannot be executed, and upon such affidavit being filed, the clerk shall endorse that bail is required, and in what sum.” s
It does not seem to me to be difficult to understand this act, or to give to the foregoing two sections of it a practical, consistent, and effectual construction, so far as they can operate essentially on the point I am now considering. The first section repealed all laws authorizing a ca sa to issue. The second section provided, 1st, that no person should, in a civil case, be arrested on an original or mesne process, unless he should be required to give bail in consequence of such an affidavit as it prescribed; and, 2nd, that a party, arrested upon affidavit, should give special bail, as if there had been no statutory exemption in any case, or should be imprisoned for failing to give such bail. The two sections together show that the capias ad satisfaciendum was abolished, but that a party might still he arrested and held to bail on a capias ad respondendum. A d by the fourth section it was provided, that a person imprisoned for failing to give bail, might be liberated by giving the bail required, or by taking the insolvent’s oath.
In Peteet vs. Owsley it is decided that a capias ad .satisfaciendum could not be allowed since 1821, and, on that point, it seems to me that there is no room for a doubt, because the act of 1821 explicitly declared that such a capias should not, thereafter, be *514 lawful, and only permitted the arrest of a debtor byy his creditor, in prescribed cases, on original or mesne process.
Bissíat*,
The opinion of my associates, not only reposes aa the supposed conclusiveness of the case of Peteet vs. Owsley, but intimates that the statute of 1821 is not ■susceptible of any satisfactory 'construction which would enable the court to ascertain the nature and ■extent of the liability of special bail, orlo determine when or how that liability mav be fixed and enfore* •ed. I admit that the language of t,he statute is not so precise and appropriate -as it might have been; but it clearly shows that tbe'legislafure intended that special bail, acknowledged pursuant to its authority, should be legally liable in some 'event and to some '■extent-; and, as already stated, it also clearly shows that a capias ad satisfaciendum could not. be issued against the principal debtor; nothing more is necessary, in my opinion, for any purpose in this case.
It is immaterial whether the bail might have had ■a right to surrender the principal or not, because, were it admitted that such a surrender might have -absolved the bail, still the creditor could riot have issued a ca-. sa. against the'debtor, and was, therefore, not required or-expected to do so. The recognisance is in these words:
“l, Mary Palmer, do hereby acknowledge myself' specialbail for the within named ffm. Lynn, in the ■suit named in the within writ.” — signed, “Mary Palmer.”
Did that undertaking impose any legal liability^ If it did, when was that liability fixed, and how was it to be enforced? These are the only questions to be considered.
That a legal liability may have resulted from the ■recognisance, 1 think there can he no reason for a plausible doubt; and I am also clearly of the opinion that, as a-necessary consequence, a ca. sa. against the principal was not necessary to the existence og enforcement of that liability.
For, as it is evident that the law prohibited such a ca. sa. the consequence is plain that, under the same law, the principal could not sustain any forfei *515 Sure of his right by not doing, what would have been unlawful; and consequently, it the bail was not jiable until a ca. sa. had been issued, he was not liahie at ail or upon any contingency. il then it can be shown that ihe recognisance imposed any legal Obligation, it will resuii tnat the plaintih was, as special oail, liable precisely as sue would nave been it there never had need any law- anthoiizmg or requiring a ca. sa.
Unseat,
Her contract contains no stipulation requiring 9 ca. sa. to issue; and, as 1 will endeavor 10 snow, 110-such condition can be implied, Out is dearly exduaed.
That the legislature intended to abolish all Jaws whien requirea, as well as those winch authorized, a Capias aa satisjacienamn, m any case or lor any pur-pose, is, to my mind, almost sen-evident. The inevitable consequence would, be,, mat, in 16¿4, the date oi". me piaiatm.s undertaking, there wa$ ho laic requiring a ca. sa. as necessary to tier kaoiiity.
The intention of the legislature is obvious and in* disputable. By autnorizing a creditor to hold hie elector to bail, and even to imprison him lor failing to give it, tbe legislature intenued nothing more nor jess than that in tins way, the plamtili's demand might, as be lore, Oe secured; and consequently, that the surety should be legally responsible. It would jaot be reasonable or allowable to suppose that the legislature, whilst acknowledging the justice of requiring a detendant to give bail or go to jail, and whilst providing a moue lor securing that end, could have intended or imagined that bail, when given, should, in no event, ue liable lor his principal. The very act of requiring bail necessarily implies that the bad shall be respomioie. As me baii is taken «ctordmg.lo law, he must be bound according to, or by the same law, m consequence oj his unaertawing. His undertaking being iegai — his obligation must be legal. tíaeii is the mevnaoie construction of the acf of 1821.; and such must be admitted to have been the intention oi me legislature. As a reasonable, if not a necessary consequence, it would seem to follow, that the legislature nueimeu that, as by the act of 1821; ca. sa. executions were aoolisned, and as, by *516 the same act, bail was allowed to be taken and held^ responsible, the legal liability, thus incurred, might be enforced without issuing a ca. sa. Any other supposition is inconsistent with the declared intention óf the legislature, and would render the second section of the act of 1821, not merely a nullity but an useless mockery of justice. It seems to me that the legislature intended, when enacting the second section of the act of 1821, that special bail taken conformably to its provisions, should be liable for the debt of the principal whenever the c?editor had failed to make it out of the principal, by resorting to all the means of coercion permitted by the law. One of the means within the creditor’s power, before the abolition of the ca. sa executions, was taken away by the act of 1821; anil consequently, the only effect, as it seems to me, of the abolition of the ca, sa. so far as special bail is concerned, was to render him as liable without a ca. sa. against his principal, as he would have been after an ineffectual return upon it before its abolition.
Disseht.
The opinion in Peleet vs. Owsley, concedes that .it was the intention of the legislature to hold special bail responsible, and virtually admits that such hail is liable, but argues — that as, before the abolition of the ca. sa. an execution-of ca. sa. against the principal was indispensable to fiorlng the liability of the bail, it is yet, though abolished., equally necessary, and that, therefore, as a ca. sa. cannot issue, the intention of the legislature cannot be effectuated, nor •the undertaking of the bail enforced. This reasoning is, to my mind, at least, inconclusive, it seems to be what logicians denominate ah enthymeme — or an imperfect or delusive syllogism. It is, in effect, this — “that as the ca. sa. was necessary to fix the .liability of bail, when the law authorized it to issue, it is equally necessary now, when the law forbids it.” 1 cannot feel the force of this reasoning. I cannot thus acknowledge a statutory right without any remedy. 1 could not admit that the same statute, which gives a right expressly, takes away constructively, all remedy for enforcing it. The acknowledged and undeniable intention of the legislature should be sufficient answer to the reasoning in *517 Peteet vs Owsley. The intention of the legislature is its will; and its will, when constitutional, is law'. If the legislature intended that a special bail should he liable without a ca. sa. then, by law, he is so lia--ble; and that such was the intention of the legislature when it enacted the act of 1821, cannot, I think, be reasonably doubted. It was not necessity that the act of 1821 should provide any remedy. It has given a legal right,-and the pre-existing remedy by scire facias still exi&tSj'and is appropriate.
Here I might close this dissent. But an answer more direct and perhaps satisfactory, may be given to the argument in Peteet vs. Owsley, it will be found in the reason of tlie old doctrine which required a ca. sa. against the principal in order to fix the liability of the hail. The liability of the bail resulted from a breach oj an express condition in his undertaking. As special bail was only a collateral security, the law would not subject him to liability until all the means of coercing the principal had failed; and therefore, the undertaking of the bail was, in express terms, that, if the creditor could not make his debt out of the principal, he (the bail) would either pay it for him or secure to the creditor the legal means of coercing him; and consequently, when the ca. sa. was a legal remedy, the undertaking of a special bail expressed that, if the principal should fail to pay the debt or to surrender himself in custody of tiie law, the bail would pay the debt lor him, or would surrender him to any ca. sa. which might be issued. There could be, therefore, no breach of the contract by- the bail, until after a ca. sa. had been issued against the principal, because, according to an express condition in Ins recognisauce, he had a right to discharge himself by' surrendering his principal. Cro. Ch. 481; I Lord Raym’d. 156; II Sanders, 72, a. n. 4; II Tidd’s Pra. 993; III Johnson’s Reports, 509.
Speaking oí the reason why special bail was liable as soon as non est inventus had been returned on a sa. sa. against the principal and not sooner, Jacob says, “For they (the bail) stipulate in this triple alternative, that defendant shall, if condemned in the suit,-.satisfy the plaintiff his debt and costs, or that *518 lie shall surrender himself a prisoner, or that they will pay it for him. As, therefore, the two former, branches of the alternative are neither of them tow-plied with, the latter must immediately take place,’? VT Ja. Law Di’y, 26. A retín n of non est inventus on-a ca. su,. against the principal, fixed the liability of. the bail,.. But although, ex debeta justilioe, the bail could not be entitled to an exoneration by a surrender of iiis principal after one ca. sa. had been returned, without effect, nevertheless, ex gratia, a practice ob-r-tamed which entitled the bail to relief by a surrender of the principal at any time befóte a return of two nihils on the scire facias; and this practice was' legalized by a statute oí this state.
It is thus manifest that the only reason why a m. sa. against the principal was originally necessary to fix the liability of the had, de jure, was because it was required by an express condition in the recognisance. The bail was not, according to an express stipulation in his contract, responsible until a ca. sa. ,had been issued against his principal; and he had the right, expressly reserved, to surrender him in cuslody and thus exoneraté himself.
A Virginia statute of 1761, prescribed the form oí a recognisance by special bail. It was alternative and substantially such ns that described by Jacob. In 1810, a statute of this state dispensed with appearance bail, and changed the ancient form of recognisances by special bail. The recognisance prescribed by that statute is general, and simply ¡acknowledges that the cognisor has become the special bail of ike defendant. But before the.abolition of the ca. sa. the construction and effect of such general .recognisances were precisely the same as if they had been as formerly, expressly alternative. By merely altering tlie/om, the legislature did not change the nature or effect of the contract of special bail; and consequently, as a ca. sa. was still one of the legal-means oí coercing the principal debtor, the right of the bail to surrender the principal was implied; and he was not, of course, liauie until after a ca. sa. had. been returned.
But the ca. sa. had been abolished before the appellant became special bad. Her recognisance ip *519 .genera!, and contains no condition requiring a ca. sa. to be issued, or entitling her to exoneration by the surrender of her principal. And no such condition can be implied by law or supplied by construction. Such an implication or construction would be contrary to the understanding of the parties and inconsistent with reason and law. When the appellant became special bail, she must be presumed to have known that no ca. sa. could be issued against her principal. She did not, therefore, intend tobe liable only in the event of that being done which shé knew was legally impossible. She knew that she would not have the right to exonerate herself by surrendering the principal; and of all this she was notified by the ■very statute which legalized the act of requiring bail, and under which she became bound. According to that law her undertaking must be construed; and ¡what effect did that law give to it? Certainly no other or less than that, if the creditor should fail, ■by legal means, to make his debt out of the principal, she would pay it. She, by her collateral undertaking, released her principal from imprisonment, and enabled him to remove himself and his property, if he had any, beyond the jurisdiction of the court in which he was sued. And if she be not responsible because the creditor has not done that which he never undertook to do, and which the law ‘.forbid, it would have been better for him that hail ■had not been required, and the statute, which authorized it was worse than a nullity. She cannot now say that the whole proceeding was mere form and parade, intended only to exhibit an idle farce; such was not the object of the law; such was not her contract when construed according to law or reason. Her contract was statutory, and must he regulated by the import, design, and effect of the statute: that forbid a ca. sa. consequently her contract did not require that one should issue, bat, if it had any obligation or ¡effect, rendered her liable without one.- The only reason why, prior to 1821, special bail was not liable until a ca. sa. had issued, was that, the undertaking of the bail was an either an express or an implied condition, that one should be issued. But, as •fince 1821, a eg. sa. execution could not be issued^ *520 there-could be no such implied condition in the ob-. ligation'of bail. The only reason for the old doctrine, then, fails in this case; and I suppose that the reason ceasing, the law also ceases; and that, as a necessary consequence, the liability of the appellant was fixed when the creditor, by issuing a fieri jadas, which was returned “no property,” had done all that the law permitted him to do, or that her contract, according to its legal import, required him to do. T feel authorized, therefore, to conclude that her undertaking is obligatory, and consequently, that she was liable without a ca. sa. against her principal; for such an alternative as that implied in the undertaking of bail, when a ca■ sa. could he issued, could not have been intended by her, or implied by the law which expressly interdicted any such process. Her recognisance entered into under the act of 1821, cannot be construed to require any thing prohibited by that act.
But if her undertaking had been expressly in the alternative, as it would have been, constructively, prior to 1821, the obligation would have been, nevertheless, valid without the issuing of a ca. sa.-, because the legal effect of her contract would have been simple; the superfluous stipulation for the surrender being illegal and inoperative.
It has been decided that a special bail, whose recognisance was acknowledged prior to the abolition of the ca. sa. and was, of course, constructively in the alternative, and entitled the bail to exoneration by the surrender of the principal, was released from liability by the abolition. See Holland vs. Bouldin, IV Monroe, 148. This is unquestionably sound law, if the power of the legislature to deprive bail of the right of surrendering the principal be conceded; because, in a disjunctive contract, all the undertakings or conditions being lawful, if one of them become impossible by operation of law or by the act of the obligee, the obligor is thereby discharged; V Coke, 22 a; Ba. ab. condition M; Com. Dig. condition D.
But the same authorities and the same reason show that ij one of the conditions of d disjunctive or alterna• *521 live contract be impossible ut the date of the contract, the obligation is precisely the same as it would, have been i/ tlie contract had not contained the impossible- stipulation. See also Cro. Ele. 780; Com. Dig. condition L. 12; Ba. ab. condition 2.
If then the recognisance of the appellant had expressly contained an alternative condition that she might discharge herself by the surrender of her principal, as that condition was impossible at the date of her acknowledgment, the legal effect of her contract was single, to-wit: that, she was bound to pav the debt if it could not he made out of the principal bv legal means. She could not. object, that the abolition of the ca sa. has deprived' her of. any right, hecanse when she nndértookto he special bail, the law did not permit the surrender of her principal, and therefore, nothing has been rendered impossible bv law or bv the act of the appellee, which was legally possible at the date of her contract.
This doctrine proves that the appellant’s liability is not dpstroved iv impaired bv the abolition of the ca. sa in 1821. It proves that if her contract had contained an express condition for the surrender of her principal, she would have been liable without a ca. sa. against him; and that, therefore, even if her undertaking co’dd he construed as containing such a condition, she is liable although no ca. sa. ever was or could he issued against him But it tends clearly to show also, that her undertaking could not. by construction, contain nov such condition, and that she was,.of course, liable on the return of the fieri facias, even if she would not have been so liable had her contract contained such condition. -
Before the abolition of the ca. sa. it was generally necessary that an assignee, before he could have legal recourse to his assignor, should have issued a ca sa. against the obligor. This was one of the implied conditions in the contract of assignment. Has the assignee now no right, to call on his assignor, hecanse he did not issue a ca. sa. against the obligor since its abolition?
Whv has he such right? Because, as the ca. sa. has been aboBdied, he has, bv issuing a fieri jadas, done *522 all that the law permitted him to do. iSo, although prior to 1821, special bail was not liable until after a ca. sa. had been issued against the principal, he is now, like the assignor, liable upon a return of no estate on a fieri facias.
Without amplifying more, I feel bound to conclude that the only reason given in the case of Peteet vs. Owsley, is not only inconsistent with the conclusion which was deduced from it, but is irreconcilable with the reason and law of this case.
It has been shown, I trust, that a recognisance entered into since the abolitionof the ca, sa. cannot be construed as containing any such condition for the benefit of the hail, as that he may surrender his principal; and that, therefore, the issuing of a ca. sa. could not be necessary to the liability of the bail. And it has also been shown that if the recognisance had contained any such condition, the bail would still be liable without a ca. sa. The consequence is that nothing is contained in or omitted by the act of 1821, which can make the liability of the appellant depend on the issuing of a ca. sa. against her principal. This conclusion seems to me to accord with the intention of the legislature, with reason, and with ■authority; and thus the second section of the act of 1821 would be not a dead letter, but would have a practical, consistent, and effecttml operation; and thus a beneficial act of the legislature would not be ■nullified, but would be permitted to operate according to its declared object and design. I concur with flie court below.
Wherefore, as I cannot, for the foregoing reasons, ^concur in recognising Peteet vs. Owsley as a conclusive authority, I have deemed it my duty to dissent from it, how much soever I may respect the distinguished jurists who decided it, or my associates, who acquiesce in its authority.
But, whatever I may think, I shall hereafter feel it my duty to consider the question here discussed): as now settled, finally and conclusively.